### In re JOINT EASTERN AND SOUTHERN DISTRICTS ASBESTOS LITIGATION.

**United States Bankruptcy Court Southern District of New York.**

### In re JOHNS–MANVILLE CORPORATION, et al., Debtors.

**Bernadine K. FINDLEY, as Executrix of the Estate of Hilliard Findley, et al., Plaintiffs,**

v.

**Donald M. BLINKEN, et al., Defendants.**

No. CV 90–3973.

Index No. 4000.

United States District Court, E. and S.D. New York.

July 27, 1993.

Caplin & Drysdale by Elihu Inselbuch, New York City, Cartwright, Slobodin, Bokelman, Borowsky, Wartnick, Moore & Harris by Harry F. Wartnick, San Francisco, CA, Baron & Budd by Frederick M. Baron, Dallas, TX, for a subclass.

Hopkins & Sutter by Murray Drabkin, Walter Umphrey, Alan Nisselson, Washington, DC, for Cimino plaintiffs.

Gertler, Gertler & Vincent by M.H. Gertler, New Orleans, LA, for New Orleans plaintiffs.

Cooney & Conway by Kevin J. Conway, Kathy Byrne, Chicago, IL, for Estate of Hugh Wilson.

Paul, Weiss, Rifkind, Wharton & Garrison by Leslie Gordon Fagen, New York City, for future claimants.

Gillenwater, Nichol & Ames by Paul T. Gillenwater, Knoxville, TN, for Tennessee plaintiffs.

Patten, Wornom & Watkins by Robert R. Hatten, New Port News, VA, Glasser & Glasser by Richard S. Glasser, Norfolk, VA, Schoeman, Marsh & Updike by Michael E. Schoeman, New York City, for Virginia judgment creditors.

Davis, Polk & Wardwell by Lowell Gordon Harriss, New York City, for Manville Corp.

John H. Faricy, Jr., Minneapolis, MN, for MacArthur Co.

Debevoise & Plimpton by Anne E. Cohen, New York City, for Owens–Corning Fiberglass Co.

Steele & Sales by Katherine M. Steele, Seattle, WA, for E.J. Bartells Co.

Shea & Gardner by Frederick C. Schafrick, Washington, DC, for Center for Claims Resolution.

Hal Pitkow, Washington, DC, for Edward Venables, et al. as objecting parties.

David Austern, Gen. Counsel, Manville Personal Injury Settlement Trust, Washington, DC, Donovan, Leisure, Newton & Irvine by James L. Stengel, Peter G. Angelos by Timothy J. Hogan, Levy, Phillips & Konigsberg by Stanley J. Levy, Rose, Klein & Marias by Robert B. Steinberg, Connerton, Ray & Simon by Shepard A. Hoffman, Edward O. Moody, Sterl F. Shinaberry, Michael B. Serling, Steven H. Wodka, Brayton, Gisvold & Harley by Alan R. Brayton, Paul, Reich & Myers by Robert Paul, Joseph Rice, Thomas W. Henderson, McCarter & English by Andrew T. Berry, Bill Ravanesi, White Lung Ass'n by James Fite Myles O'Malley Paul L. Safchuck, New York City, for Manville Personal Injury Settlement Trust.

## AMENDED MEMORANDUM AND ORDER

Before WEINSTEIN, Senior District Judge, and BURTON R. LIFLAND, Chief Bankruptcy Judge.

The Manville Personal Injury Settlement Trust (the Trust) seeks to make substantial payments immediately, under terms that will save large sums for most current and future claimants, for asbestos-related injuries to judgment creditors and those who have long-settled cases. For the reasons set out below the proposal is approved. It is essential that those who are hurting from asbestos-related illnesses, many of whom have been waiting years to be made whole, obtain payment quickly. Because the Trust has been receiving substantial payments from the Manville Corporation pursuant to the courts' prior orders, there is enough cash on hand to support these proposed expenditures of Trust funds. It is time to pay.

## I. HISTORY OF THE LITIGATION

The long history of the Manville phase of asbestos litigation, now spanning more than a decade, has been described in detail. *See In re Joint E. & S. Dists. Asbestos Litig.*, 982 F.2d 721, 725–32 (2d Cir.1992), *modified on rehearing sub nom., In re Findley*, 993 F.2d 7 (2d Cir.1993); *In re Joint E. & S. Dists. Asbestos Litig.*, 129 B.R. 710, 734–76 (E. & S.D.N.Y.1991). This history is summarized chronologically as follows:

1920–1970 The Johns–Manville Corporation is the largest manufacturer of asbestos-containing products and the largest supplier of asbestos in the United States. It fails to adequately warn asbestos workers of known dangers.

August 26, 1982 Fear of burgeoning asbestos-related tort claims, which it estimates at over $1 billion, causes the Johns–Manville Corporation to file for reorganization under Chapter 11 of the United States Bankruptcy Code.

1982–1986 Negotiations take place in the United States Bankruptcy Court for the Southern District of New York for reorganization of the Johns–Manville Corporation. The proceedings include both present and future claimants. The Bankruptcy Court appoints a legal guardian to represent the future claimants. No asbestos-related claims are paid during the period of bankruptcy proceedings.

August 1986 The Second Amended and Restated Plan of Reorganization (the Plan) is presented to the Bankruptcy Court. *In re Johns–Manville Corp.*, 66

B.R. 517 (Bankr.S.D.N.Y.1986). It creates the Trust and funds it with various assets of the debtor corporation and stock and profits of its successor, the Manville Corporation.

December 1986 The Plan is confirmed. *In re Johns–Manville Corp.*, 68 B.R. 618 (Bankr.S.D.N.Y.1986). The Bankruptcy Court issues an injunction requiring all asbestos claimants with health claims against the Johns–Manville Corporation to proceed against the Trust, first by attempting settlement and then by opting for mediation or tort litigation. The Manville Corporation continues the business of the debtor insulated by an injunction preventing asbestos claimants from proceeding against it or its assets. Appeals follow.

March 30, 1988 Challenges to the Plan are rejected by the Court of Appeals for the Second Circuit. *Kane v. Johns–Manville Corp.*, 843 F.2d 636 (2d Cir. 1988).

November 28, 1988 The Plan is executed and delivered and the Trust becomes operative. Asbestos-related claims against the Trust can now proceed. Even before its first payment, the Trust and plaintiffs' counsel are aware that the Trust will have troughs in funding.

1988–1990 The Trust processes claims. In some instances it agrees to large block settlements with single plaintiffs' firms that commit tens of millions of dollars from the Trust's limited assets. *See In re Joint E. & S. Dists. Asbestos Litig.*, 129 B.R. 710, 754–58 (E. & S.D.N.Y.1991). The clear insufficiency of Trust assets creates a strong incentive for plaintiffs' attorneys to secure early settlements and judgments. The Trust's in-house operational costs and outside legal fees approach $100 million per year. Many settlements include provisions for deferred payment in unwarranted hopes that future profits of the Manville Corporation due to the Trust will be available to satisfy the Trust's obligations.

March 1990 The Trust has received more than 150,000 asbestos claims, 50 percent more than the highest estimate at the time of the Plan's approval. 22,386 of these claims have been settled at an average value of $42,000—far higher than was originally estimated. The Trust is effectively without funds to meet its current and short-term obligations.

March 31, 1990 The Trust announces a revised payment plan for settlements and judgments under which 40 percent would be paid 90 days after the end of the first year in which the claimant would be eligible for payment under the Trust's first-in-first-out (FIFO) queue, and the remaining 60 percent would be paid after another five years. This plan is illusory.

July 9, 1990 Acting pursuant to their authority to withdraw a bankruptcy case in whole or in part from the Bankruptcy Court, the United States District Courts for the Eastern and Southern Districts of New York issue an order staying payments by the Trust of judgments, settlements and legal fees.

September 18, 1990 Marvin E. Frankel is appointed as a special master and directed to hold hearings and report on the financial condition of the Trust and whether there exists a substantial probability that continued payment of damage awards will exhaust its assets.

November 3, 1990 Special Master Frankel reports that the Trust is "deeply insolvent," estimates that the value of claims will exceed projected assets by at least three times, and states that the Trust lacks the cash required to pay the then liquidated total of $448.5 million in claims. Intensive negotiations under the courts' direction ensue for the creation of a revised Trust Distribution Process.

November 19, 1990 Plaintiffs file, in the District Courts and the Bankruptcy Court, a limited-fund class action complaint against the trustees of the Trust seeking a revision of the payment procedures to promote equitable compensation of all Trust beneficiaries. Counsel submit the same day a stipulation of

settlement of that class action, including a revised Trust Distribution Process.

November 23, 1990   The courts conditionally certify the class; appoint representative counsel, including a representative of future claimants; set fairness hearings; approve a form of notice; and stay all payments by the Trust and all proceedings against it.

November 1990–February 1991   Notice of the class certification and copies of the courts' orders are provided to counsel for all known represented claimants, to 1,500 pro se claimants, to all courts in which the Trust is a party to litigation and to other interested persons, including publication in 11 major newspapers. Fairness hearings are held over eight days in four cities.

December 7, 1990   Professor Margaret E. Berger is appointed pursuant to Rule 706 of the Federal Rules of Evidence to consider the creation of a panel of experts to evaluate and predict the volume and type of future claimants.

February 13, 1991   The courts issue an order and partial judgment certifying a mandatory non-opt-out class under Rule 23(b)(1)(B) of the Federal Rules of Civil Procedure.

April 22, 1991   The courts approve Professor Berger's Interim Rule 706 Report and direct studies projecting future claims under Professor Berger's direction.

May 1991   The courts circulate a preliminary draft of a memorandum and final judgment, affording the parties an opportunity to comment.

June 10, 1991   The first notice of appeal from the courts' final judgment is filed, based upon the preliminary draft.

June 27, 1991   The courts issue an amended memorandum, order and final judgment.   It approves the settlement, makes permanent the prior stay of proceedings against the Trust and reaffirms the prior injunction issued by the Bankruptcy Court restricting suits against the Manville Corporation.   The settlement establishes a complex Trust Distribution Process intended to ensure solvency of the Trust and equitable distribution of its assets, including the division of asbestos health claimants into serious and less serious conditions and a procedure for channelling claims out of the courts.   Additional financing for the Trust from the Manville Corporation is provided, and attorneys' fees are limited.

February 24, 1992   Argument is heard in the court of appeals.

December 4, 1992   The court of appeals issues an opinion vacating the settlement and remanding the case for further proceedings.   The court's chief objection is that subclasses have not been created to represent the interests of the various categories of claimants against the Trust.   The court of appeals approves use of a Rule 706 panel.

December 7, 1992   In a memorandum and order issued in response to the court of appeals' first opinion, the parties are directed by the courts to appear ten days after the issuance of the mandate to be heard with respect to all pending matters, the extension of the stays and the future course of the litigation in order to expedite payment.

December 18, 1992   A petition for rehearing is filed urging the court of appeals to clarify its opinion with respect to the question whether it meant to hold that claimants at the front of the Trust's FIFO queue have a substantive legal right to priority in distribution of the Trust's assets.

December 31, 1992   The court of appeals, by letter, invites the parties to submit papers in response to the petition for rehearing and to supplement the record with respect to the FIFO issue.

May 5, 1993   The court of appeals issues a second opinion granting the petition for rehearing and modifying its first opinion by stating that the court did not intend to hold that separate subclasses are required to represent those at the front and the back of the FIFO queue.

May 27, 1993   The courts receive the mandate from the court of appeals.

June 8, 1993  The courts hold a hearing for reports on the status of the litigation and the setting of a schedule for further proceedings.  Temporary stays of all state and federal actions against the Trust are extended until August 31, 1993.  The courts urge the parties once again to expedite payments.  Status conferences are scheduled for July 20, 1993 at 10:00 a.m., August 12, 1993 at 2:30 p.m., and September 8, 1993 at 2:30 p.m. for reports on the progress of renewed settlement negotiations and for the setting of motion schedules and trial dates as may be required.  The motions of various claimants who have obtained judgments against or have reached settlements with the Trust for relief from the stays are temporarily denied.

Estimates are given to the courts that the Trust's assets by the end of 1993 will be between $400 million and $1 billion—most probably in the neighborhood of $600 million to $700 million.  It is estimated that current unpaid claims against the Trust exceed 170,000, with a total estimated value of approximately $5 billion.  New claims continue to increase swiftly.

The courts suggest that they will consider the possibility of ordering, *pendente lite*, that the Trust immediately commence paying a percentage of the value of all valid claims.  Should a new class action settlement or a *pendente lite* payment not afford the means of securing quick succor to the injured, the courts suggest, other procedures including bankruptcy or quasi-bankruptcy proceedings for the Trust will be considered.

Negotiations among all the parties proceed.  Texas and Virginia judgment creditors and the Trust reach an agreement.

July 13 and July 15, 1993  The courts sign orders directing all interested parties to show cause why orders should not be entered directing the Trust to pay, on a substantially discounted basis, a group of Virginia and a group of Texas claimants who secured judgments against and settlements with the Trust prior to November 19, 1990 and directing the Trust to offer the same settlement terms to all other claimants who secured judgments or settlements prior to that date.

## II.  DISCOUNTED PAYMENT OF JUDGMENTS AND SETTLEMENTS

2,972 persons with asbestos-related claims comprise the plaintiff class in an action titled *Cimino v. Raymark Industries, Inc.*, No. 86 B 0456, filed in the United States District Court for the Eastern District of Texas.  At the height of the rush by plaintiffs to obtain the Trust's diminishing assets and before the Courts had entered stays, this case was settled.  In open court on February 6, 1990 and in written form on July 2, 1990, the *Cimino* plaintiffs and the Trust entered into an agreement under which the class action would be settled for $140,564,000.  On September 12, 1990, a final judgment was issued, *nunc pro tunc* to July 15, 1990, incorporating the terms of that settlement agreement.  The agreement called for six annual payments to be made to the *Cimino* plaintiffs between 1991 and 1996.  Because of the stays in effect since July of 1990, the Trust has not made any of these payments and is now $35 million in arrears.

In June of 1990, also in the midst of the scramble by plaintiffs to reach the diminishing assets of the Trust, another 1,088 individuals with asbestos-related personal injury or wrongful death claims against the Trust who had filed individual actions in the state and federal courts in Virginia reached settlements with the Trust and secured final judgment orders based upon those settlements.  Those judgments totalled $63,010,616.  These Virginia judgment creditors reached an agreement with the Trust on November 16, 1990 under which the judgments would be paid in three annual installments commencing 10 days after the payment of a special dividend from the Manville Corporation to the Trust.  That dividend was paid on December 28, 1992.  Because of the stays in effect since July of 1990, no payments have been made to the Virginia judgment creditors.

After intense negotiations with Texas and Virginia judgment creditors and the assistance of the representative of future claimants and others, the Trust now seeks to pay these two groups of creditors on a discounted basis. Largely as a result of the terms of the 1990 class action settlement and the stays that have been in effect, the Trust's assets are now significantly enhanced in comparison to their dwindling level in the Spring of 1990. By the end of 1993, the Trust will probably have in the neighborhood of $600 million to $700 million. In view of the low current interest rates, these funds are of little value standing idle. As the courts stated on June 8, 1993, the Trust's funds should be paid out to its beneficiaries as soon as possible.

A discounted payment to those who secured settlements and judgments prior to the institution of the class action on November 19, 1990 is a sensible way to begin the payment process. The rights of these claimants cannot be ignored. Neither can they disregard the plain fact that, even in its improved condition, total claims against the Trust will far exceed its assets. With in the neighborhood of 400,000 total asbestos claims likely against the Trust by the conclusion of this litigation, it remains a severely limited fund.

Leaving aside considerations of just and equitable distribution of the Trust's assets, these creditors cannot realistically expect to receive 100 percent of the funds owing to them under agreements entered into several years ago when the extent of the Trust's distressed financial condition was already clear. A possible bankruptcy or quasi-bankruptcy proceeding involving the Trust threatens to greatly reduce the value of their settlements and judgments. *See Cutler v. The 65 Security Plan*, 831 F.Supp. 1008 (E.D.N.Y.1993). A reasonable view of the real value of the contingent assets of these creditors must discount for both the likely further delay in payments due and the risk that full or even substantial payment may never be secured.

In the interests of prompt securing of funds owing to claimants, prudent maximization of the Trust's assets and equitable treatment of all beneficiaries, the Trust, the Virginia judgment creditors and the *Cimino* plaintiffs have agreed to payment on the following terms: the present value of the future payments owing to these claimants is computed at a rate of five percent (5%) per annum and the resulting present value is further discounted by an additional 20 percent (20%). In the case of the Virginia judgment creditors, the resulting payment is $49,079,659. In the case of the *Cimino* plaintiffs, the payment is $105,412,647. The total payments by the Trust are $154,492,306. This represents a savings to the Trust of approximately $49,150,000 from what would have been paid had the Trust been required and able to meet its obligations in full.

These figures reflect a reasonable settlement that accounts for the interests of the Trust's present beneficiaries as a whole, future claimants and the Virginia and Texas asbestos claimants to whom payments are owed. It should be noted that the Texas judgment creditors are secured. Release of this security into interest-bearing funds for the use of the Trust's creditors is a positive factor in making this settlement desirable. The accommodation represents a sensible assessment of the capabilities and likely future condition of the Trust.

There is no reason why these terms should not be offered, as the Trust requests, to the additional approximately 7,600 claimants who are not members of these two groups, but who also secured settlements or judgments prior to November 19, 1990. Some of these claimants are represented by counsel while others have proceeded *pro se*. They are owed approximately $279 million. The Trust proposes that they be offered agreements to receive immediate discounted payments as follows:

(1) *Step One:* The Trust will compute the present value of the unpaid portion of the claim from its future scheduled payment dates, back to August 6, 1993, at a rate of five percent (5%) per annum as set forth below:

$$\text{Present Value} = \frac{\text{Future Scheduled Payment}}{(1.05) \text{ to the power of } (n/365)}$$

where n equals the number of days from August 6, 1993 to the future scheduled payment date. For example, if a claim was settled for $100,000 of which $40,000 was previously paid and a current outstanding balance of $60,000 is due on April 1, 1995, the present value using the above formula is $55,354. Multiple future scheduled payments for a claimant shall be reduced to present value using the above formula and summed to yield a total present value for that claim.

(2) *Step Two:* The discounted amount offered by the Trust to a claimant shall be the total present value of the outstanding balance, computed pursuant to Step One, less a 20 percent (20%) discount applied to the sum of the total present value plus any prior payments on such claim. The discounted amount, therefore, equals the total present value less the total present value plus any prior payments times 20 percent (20%). For example, if the claimant described in Step One had previously settled for $100,000 and already had received $40,000, the resulting Trust offer would be $36,283 computed as follows: $55,354 (present value of $60,000) plus $40,000 equals $95,354, times 20 percent (20%) equals $19,071. $55,354 less $19,071 equals $36,283.

If all of the approximately 7,600 claimants eligible for this offer accepted it, about $174 million would be paid out by the Trust (about $109 million less than is and will ultimately be owed by the Trust).

The class of claimants in this non-opt-out, limited fund class action has been defined as follows:

The Class consists of all Beneficiaries of the Trust, including, but not limited to, all persons who presently have or may in the future have (a) any unliquidated claim for death or personal injury arising from exposure to asbestos and arising or allegedly arising, directly or indirectly from acts or omissions of the Manville Corporation or any of its predecessors, subsidiaries or affiliates; (b) any warranty, guarantee, indemnification or contribution claims against the Trust arising directly or indi-

rectly from exposure to asbestos by any member of the Class; and (c) *settlements or judgments arising from any of the foregoing claims previously asserted against the Trust.*

Stipulation of Settlement, ¶ 2, *reprinted in In re Joint E. & S. Dists. Asbestos Litig.*, 120 B.R. 648, 669 (E. & S.D.N.Y.1990) (emphasis added). The Virginia judgment creditors, the *Cimino* plaintiffs and all other claimants who secured settlements or judgments prior to November 19, 1990, by accepting the Trust's offer according to the above-stated terms, will be permitted by the courts to opt out of the plaintiff class under the special circumstances of these settlement agreements since their withdrawal substantially enhances the overall fund available for other class members. *See County of Suffolk v. Long Island Lighting Co.*, 710 F.Supp. 1407, 1419–21 (E.D.N.Y.1989) (party permitted to opt out of mandatory class action on grounds of special circumstances), *aff'd*, 907 F.2d 1295, 1302–05 (2d Cir.1990) (trial court acted within its discretion to facilitate "fair and efficient conduct of the action" in permitting opt-out from mandatory class action).

The courts continue to encourage all the interested parties to work toward a quick settlement of the class action in accord with urgings of the courts and the mandate of the court of appeals. The courts will take under advisement all recommendations for the creation of appropriate subclasses and the representation of those subclasses. All parties have been and shall continue to be afforded full opportunity to remain apprised of and to participate in all settlement discussions.

The courts will continue to consider the possibility of a *pendente lite* payments of approximately 10 percent (10%) of the value of all claims against the Trust as a means of ensuring some equitable and temporary immediate relief for the injured persons who have been waiting for so long. Those with exigent claims should be paid promptly as allowed by prior orders of the courts.

Expert analysis credited fully by the courts has concluded that such payments can be readily funded by the Trust, accounting for the time necessary to process claims and expected future additions to the Trust's as-

sets, without jeopardizing the rights of future claimants.

Simultaneously with the issuance of this memorandum, orders have been issued by the courts:

(1) Approving payment of the *Cimino* and Virginia settlements;

(2) Making the *Cimino* and Virginia settlement terms available to others who have settled or obtained judgments now final prior to November 19, 1990;

(3) Requesting the parties to consider subclasses and representation.

### Findings and Order

This matter came before the District Courts for the Eastern and Southern Districts of New York and the Bankruptcy Court for the Southern District of New York (the Courts) on July 20, 1993, on the motions of the Manville Personal Injury Settlement Trust (the Trust), the Virginia Judgment Creditors, a group consisting of 1,088 individuals with final judgments against the Trust filed in the United States District Courts for the Eastern and Western Districts of Virginia and certain states courts in Virginia and the Cimino plaintiffs, a group consisting of 2,972 individuals with a final judgment against the Trust who are members of the plaintiff class entitled *Cimino et al. v. Raymark Industries, et al.*, No. 86 B 0456 filed in the United States District Court for the Eastern District of Texas, Beaumont Division.

A full hearing was held. Presiding were the senior district judge and chief bankruptcy judge assigned from the district court of the Eastern and Southern Districts of New York and the bankruptcy court of the Southern District of New York. A financial analysis was provided by the consultant Mark Peterson. The Courts have reviewed the evidence submitted by the parties and argument. Further time for briefing and orders was permitted. These additional papers have also been considered. The Courts find and order as follows:

1. The Virginia Judgment Creditors consist of 1,088 individuals who filed individual actions against the Trust in the United States District Courts for the Eastern and Western Districts of Virginia and certain state courts in Virginia.

2. During June 1990, the Virginia Judgment Creditors began to settle their claims against the Trust and to reduce such settlements to final judgments. The Virginia Judgment Creditors hold individual final judgments against the Trust totalling $63,010,616. None of these judgments has been the subject of any objection, appeal or collateral attack for a period of more than three years.

3. On November 16, 1990, the Virginia Judgment Creditors and the Trust entered into an agreement. The Trust agreed to pay the sums owed to the Virginia Judgment Creditors in three annual installments commencing tens days after the Manville Corporation paid the First Special Dividend to the Trust pursuant to the Master Agreement between the Trust and the Manville Corporation dated November 15, 1990. The First Special Dividend was paid on December 28, 1992, but no payments have been made to the Virginia Judgment Creditors.

4. While the Trust has had funds to satisfy its obligations to the Virginia Judgment Creditors, it has been prevented from doing so as a result of a series of stays issue by the Courts which, among other things, prohibit the payment of judgments by the Trust and the execution of judgments against the Trust.

5. The stay presently in effect was issued upon motion of the Trust at the conclusion of a hearing held by the Courts on June 8, 1993. The Virginia Judgment Creditors filed objections to the issuance of that stay. Although the Courts temporarily denied the Virginia Judgment Creditors' motions to lift the stay, they stated that the Courts would review this matter at a subsequent hearing. The Courts requested the Virginia Judgment Creditors and the Trust to attempt to work out an arrangement whereby the Judgment Creditors would accept less than the full amounts owed under their respective judgments in exchange for prompt payment.

6. The Virginia Judgment Creditors have reached an agreement with Trust. They will accept a reduction of the amounts owed un-

der their respective judgments in exchange for prompt payment. Pursuant to the terms of the Modification Agreement between the Trust and counsel for the Virginia Judgment Creditors, the Trust has agreed to promptly pay $49,079,659 in full satisfaction of the 1,088 judgments.

7. The Cimino Plaintiffs consist of 2,972 individuals with asbestos-related claims against the Trust. They comprise the plaintiff class in the class action entitled *Cimino v. Raymark Industries, Inc., et al.*, No. 86 B 0456, filed in the United States District Court for the Eastern District of Texas.

8. In open court on February 6, 1990 and then in written form on July 2, 1990, the Cimino Plaintiffs and the Trust entered into a settlement agreement (the Settlement Agreement). The Cimino Plaintiffs agreed to settle their claims against the Trust for $140,564,000, payable over time, but secured by credit instruments from the Trust.

9. On September 12, 1990 (amended October 25, 1990), the Honorable Robert M. Parker, Chief Judge, United States District Court, Eastern District of Texas, issued a Final Judgment (the Cimino Judgment), *nunc pro tunc* to July 15, 1990, incorporating the terms of the Settlement Agreement.

10. The Cimino Judgment requires the Trust to pay the Cimino Plaintiffs, through their attorneys, the following amounts in the following installments:

| | Year | Umphrey, Stephenson, et al. | Reaud, et al. | Total |
|---|---|---|---|---|
| 1 | 1991 | $ 7,000,000 | $ 3,000,000 | $ 10,000,000 |
| 2 | 1992 | $ 7,000,000 | $ 3,000,000 | $ 10,000,000 |
| 3 | 1993 | $10,000,000 | $ 5,000,000 | $ 15,000,000 |
| 4 | 1994 | $20,000,000 | $10,000,000 | $ 30,000,000 |
| 5 | 1995 | $20,000,000 | $10,000,000 | $ 30,000,000 |
| 6 | 1996 | $34,564,000 | $11,000,000 | $ 45,564,000 |
| | TOTALS | $98,564.000 | $42,000,000 | $140,564,000 |

11. The Trust has not made any of the scheduled payments called for under the Cimino Judgment. The Trust is presently $35 million in arrears.

12. While the Trust has had funds sufficient to satisfy its obligations to the Cimino Plaintiffs, it has been prevented from doing so as a result of a series of stays issued by these Courts which, among other things, prohibit the payment of judgments by the Trust and the execution of judgments against the Trust.

13. The stay presently in effect was issued upon motion of the Trust at the conclusion of a hearing held by the Courts on June 8, 1993. The Cimino Plaintiffs filed objections to the issuance of that stay.

14. Although the Courts temporarily denied the Cimino Plaintiffs' motions, and stated that the Courts would review this matter at a subsequent hearing, the Courts request-ed that the Cimino Plaintiffs and the Trust attempt to work out an arrangement whereby the Cimino Plaintiffs would accept less than the full amounts owed under their judgment in exchange for prompt payment.

15. The Cimino Plaintiffs have reached an agreement with the Trust (the Cimino Modification Agreement). They will accept a reduction of the amounts owed under their judgment in exchange for prompt payment. Pursuant to the terms of the Modification Agreement between the Trust and the Cimino Plaintiffs, the Trust has agreed to pay $105,412,647 in full satisfaction of the Cimino judgment.

16. The Virginia and the Cimino Modification Agreements are in the best interests of the Trust and its beneficiaries, including all members of the class. They will make more money available for present and future

claimants other than the Cimino Plaintiffs and the Virginia Judgment Creditors.

17. The Trust has represented that the formula used by the Trust for computing the amount of the payments under the Modification Agreement will be made available for settlement with other Trust beneficiaries holding judgments against the Trust entered prior to November 19, 1990 or who reached settlement agreements with the Trust prior to November 19, 1990. This arrangement is equitable and fair to all present and future claimants.

18. Without determining whether or not the Virginia Judgment Creditors and the Cimino Plaintiffs were originally or are members of the plaintiffs class, deeming the Virginia Judgment Creditors and the Cimino Plaintiffs to have opted out of the class action and approving payment under their respective Modification Agreements will facilitate the fair and efficient conduct of *Findley v. Blinken.* Such an opt-out is required, appropriate and equitable under the special circumstances now prevailing. *See County of Suffolk v. Long Island Lighting Co.,* 710 F.Supp. 1407, 1419–21 (E.D.N.Y.1989) (party permitted to opt out of mandatory class action on grounds of special circumstances), *aff'd,* 907 F.2d 1295, 1302–05 (2d Cir.1990) (trial court acted within its discretion to facilitate "fair and efficient conduct of the action" in permitting opt-out from mandatory class action). The discount on the amounts of their judgments will inure to the benefit of the Trust's beneficiaries. The payment will not impair or impede the ability of other class members to protect their interests. The securities now guaranteeing the Cimino judgments will be available for investment for the benefit of all creditors. The situation of the Virginia Judgment Creditors and the Cimino Plaintiffs is distinguishable from that of the general class.

IT IS ORDERED THAT:

A. The Manville Personal Injury Settlement Trust (the Trust) pay to Glasser and Glasser, P.L.C., as attorney for the Virginia judgment creditors, the amount of $36,745,-503 and to Patten, Wornom & Watkins, L.C., as attorney for the Virginia judgment creditors, the amount of $12,334,156 in accordance with the Virginia Modification Agreement between the Trust and said firms dated July 13, 1993, said funds to be held by and in the name of said firms, respectively, in "Crest-Funds, U.S. Treasury Fund," under a custody service agreement with the Crestar Bank, a Virginia banking institution, pending disposition in accordance with the Modification Agreement.

B. The Trust pay into the registry of the United States District Court for the Eastern District of Texas the amount of $105,412,647 for distribution among the Cimino plaintiffs pursuant to and subject to an order of that court approving the modification of the Cimino Settlement Agreement and subject to the terms of a Modification Agreement between the Trust and the Cimino plaintiffs dated July 15, 1993.

C. The stay issued by the Courts on June 8, 1993 is modified to allow and to direct the Trust to make payments in accordance with paragraphs A and B of this order.

D. Without determining whether or not the Virginia Judgment Creditors and the Cimino Plaintiffs were originally or are members of the plaintiff class, the Virginia Judgment Creditors and the Cimino Plaintiffs are deemed to have opted out of the plaintiff class in *Findley v. Blinken.*

E. Paragraphs A, B, C and D of this order are stayed until 10:00 a.m. on July 26, 1993 to permit an application to the court of appeals for a further stay.

F. If prior to 10:00 a.m. on July 26, 1993, a notice of appeal and supersedeas bond in the amount of $5,000,000 indemnifying the Virginia judgment creditors and the Cimino plaintiffs is filed with the Clerk of the United States District Court for the Eastern District of New York, paragraphs A, B, C and D of this order are further stayed until the earlier of

(a) 10:00 a.m. on August 2, 1993, or

(b) the disposition of such appeal.

G. The amount of damages which may be recoverable by the Virginia judgment creditors and the Cimino plaintiffs against any such appellant shall not be limited by the amount of the bond. It is probable that

damages from any stay during appeal will exceed the amount of the bond. The attorneys who may be liable for such damages have not been shown to have sufficient assets to respond to a judgment for probable damages.